**ARTH MAIN STREET DRUGS, INC., et al., Appellants (Intervenor-Defendants below),**

**and**

**Indiana Alcoholic Beverage Commission et al., Non-Appealing Defendants,**

**v.**

**A–1 BEVERAGE COMPANY, INC., et al., Plaintiffs-Appellees.**

**No. 1–1078A303.**

Court of Appeals of Indiana, Fourth District.

May 20, 1980.

Rehearing Denied July 18, 1980.

William C. Barnard, James E. Hughes, Gordon L. Pittenger, Sommer & Barnard, Indianapolis, for appellants.

James W. Bradford, Indianapolis, Frank E. Gilkison, White, Beasley, Gilkison, Retherford & Buckles, Muncie, William E. Jenner, Jenner & Brown, Indianapolis, R. M. Gholston, Young, Gholston & Young, Franklin, for plaintiffs-appellees.

CHIPMAN, Judge.

This is an appeal from a decision of the Johnson Circuit Court granting declaratory and injunctive relief. The plaintiffs, 27 beer wholesalers and some of their shareholders and employees [wholesalers] filed a complaint which challenged a resolution passed by the Alcoholic Beverage Commission [ABC]. That resolution interpreted the Alcoholic Beverages Act, Ind.Code 7.1–1–1–1 *et seq.*, as permitting beer retailers to pick up beer at a Wholesaler's dock and transport it to their retail premises. Shortly after the filing of the complaint a group of beer retailers [Retailers] was permitted to intervene as defendants. After a lengthy trial, the court found beer retailers were not authorized to transport beer and ordered the ABC to prohibit retailer transportation.

The Retailers subsequently filed a Motion to Correct Error and requested the judgment be stayed pending appeal. Both motions were denied and the Retailers took the necessary steps to perfect this appeal and obtain appellate review of the denial of the stay. On December 12, 1978, a stay was granted providing the Retailers posted a $100,000 appeal bond. The bond was not posted thus rendering the stay ineffective.

Before discussing the issues raised by the parties it is important to note the nature of the dispute which resulted in this litigation. During 1974 a few beer wholesalers began offering price discounts to retailers who purchased beer from the wholesaler's dock and transported it themselves. Consequently the sales of some wholesalers who did not engage in "dockselling" began to drop off. Believing only wholesalers should be permitted to haul beer these wholesalers, financed by their trade association, Beer Distributors of Indiana [BDI], instituted a number of judicial and legislative actions.

In 1975 and 1976 suits to prohibit retailers from transporting beer were filed in Indiana state courts. Both of these cases were dismissed by the respective trial courts and no appeals were taken.

During the 1976 session of the Indiana General Assembly House Bill 1241 was introduced. This bill would have allowed only holders of "malt beverage transport permits" to transport beer. Only beer wholesalers would be issued transportation permits. H.B. 1241 passed both houses but was vetoed by Governor Bowen, whose veto message read:

"Mr. SPEAKER AND MEMBERS OF THE HOUSE OF REPRESENTATIVES: I return herewith House Enrolled Act No. 1241 which I have this 20th day of February 1976, vetoed. This act would limit the number of persons who are allowed to transport certain types of alcoholic beverages in the State of Indiana and would have the effect of limiting competition in a manner inconsistent with historically honored concepts of free enterprise. Since, in my opinion, this act would impose substantial artificial restrictions upon the free enterprise system and thus is not in the best interests of the citizens of the State of Indiana, I am forced to veto the act."

The governor's veto was narrowly sustained.

A similar bill, H.B. 1200, was introduced to the 1978 General Assembly. This legislation would have expressly prohibited retailers from hauling alcoholic beverages. The bill failed to pass.

In May, 1977, the Wholesalers filed an action in federal district court seeking damages and an injunction against the governor and the ABC for refusing to prohibit transportation of beer by retailers. On August 5, 1977, Federal Judge Holder ordered the ABC to decide whether retailer hauling was permitted under the Act. Under threat of contempt the ABC passed a resolution which found retailer hauling to be legal. This action was filed shortly thereafter.

A number of complex issues are raised by the parties but our decision turns on the resolution of a single question: Whether this suit was filed prematurely thus rendering the judgment contrary to law? We conclude the filing of this suit was premature as it was begun prior to any final action by the ABC. The questions raised are therefore not judicially reviewable and we reverse.

It is well established that judicial review of an administrative action is proper only when the action is final. This tenet was first enunciated by an Indiana court in *Downing v. Board of Zoning Appeals of Whitley County*, (1971) 149 Ind.App. 687, 274 N.E.2d 542:

"Courts are reluctant to review interim steps of an administrative body which are not, or have not become final. . . . Such review would only delay the administrative process, thereby rendering administrative authority ineffectual."

*Id.* at 690, 274 N.E.2d at 544. The *Downing* court went on to define a final order.

" 'Final order' means an order ending the proceedings, leaving nothing further to be accomplished. . . . Conse-

quently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action."

*Id. See South Bend Fed. of Teachers v. NEA—SOUTH Bend, (1979) Ind.App., 389 N.E.2d 23, 28–29. That the legality of retailer hauling was not finally decided by the ABC is conclusively shown by the minutes of the ABC meeting at which the disputed resolution was adopted.*

As a preliminary matter, the ABC Chairman announced he was ordering the Commission's staff to research the question of transportation of alcoholic beverages.

"The Chairman further announced that on August 8, 1977, following the receipt of the Court's order of August 5, 1977, the staff of the Commission was directed to immediately commence research upon proposed rules and regulations concerning transportation by permittees of alcoholic beverages."

The Commission then passed the following resolution as ordered by the federal district court.

"BE IT RESOLVED that the Alcoholic Beverage Commission of the State of Indiana and its members hereby express their desire and wish to avoid any appearance of contempt for the order of the United States District Court for the Southern District of Indiana dated August 5, 1977; that it does hereby express its intention to continue to act only in accordance with law and with the utmost respect for the United States District Court above recited, reserving, however, its right to complete its appeal and to exercise all legal remedies open to its individual members questioning the legality of such order; that being advised by counsel regarding such order and its legal consequences, the Commission does hereby resolve as follows:

\*　　\*　　\*　　\*　　\*　　\*

3. That in response to such letter and such oral request the Commission hereby acknowledges that it interprets the statutes of Indiana to allow beer retailers and dealers who purchase beer from beer wholesalers at the latter's dockside premises to haul beer to the former's premises; "

The minutes reflect additional consideration was given to the question of retailer hauling.

"The Chairman then announced that a number of inquiries and comments had been made regarding the general subject of the transportation of alcoholic beverages into and within the State of Indiana by the various permittees and invited a discussion by the Commission in that regard. After discussion of the subject matter and upon motion duly made and seconded, the following resolution was adopted:

*It is therefore resolved as follows* :

1. The staff of the Commission is hereby instructed to continue its research on proposed rules and regulations upon the transportation of alcoholic beverages by public or private carriers into and within the State of Indiana, including such transportation by all permit holders and to report fully thereon at the Commission's next statutory meeting on September 20, 1977."

These minutes clearly demonstrate that the action taken by the ABC was not final. The resolution which stated the ABC interpreted the Act to permit retailer transportation of beer was at best a mere expression of the ABC's opinion which was passed under threat of contempt by Judge Holder. This was not the type of considered, public action which constitutes a proper exercise of an administrative agency's rule-making authority. Ind.Code §§ 4–22–1–11—18. Rather it was an informal interpretive opinion which was expressed to avoid a contempt citation and answer a specific question propounded by the attorney for the wholesalers' trade association. In addition, the ABC specifically ordered its staff to "continue its research on proposed rules and regulations upon the transportation of alcoholic beverages . . . ." Thus the question was clearly a "matter . . . re-

tained for further action." *Downing, supra* at 691, 274 N.E.2d at 544, and was not finally resolved.

Our decision is supported by a recent, highly analogous case, *Indiana Alcoholic Beverage Commission v. McShane*, (1976) Ind.App., 354 N.E.2d 259. *McShane* was an action to compel the ABC to enforce its existing rules and regulations prohibiting, *inter alia*, the advertising of prices for alcoholic beverages. The suit was filed after the passage of an ABC resolution and a day before public hearings were to be held on the question. Among other things the Court held the suit was filed prematurely as the ABC had not taken final action by adopting or revoking any of its rules or regulations.

Appellee Wholesalers agree with the holding of *McShane* but argue it is inapplicable here because the ABC's resolution was a final act. The minutes quoted above refute this contention. That the ABC had not taken other formal action on the question by the time this case went to trial is irrelevant. The fact remains this suit was filed prior to any final ABC action and was therefore premature.

In closing we feel compelled to make an observation. The dispute which gave birth to this case has a long and inglorious history. It has spawned at least four separate law suits and two lengthy attempts at legislation. Today, as a result of the time honored principles of separation of powers, we regretfully find ourselves unable to lay the dispute to rest. Nevertheless, we believe the issue should be resolved. The best vehicle for this resolution is unquestionably a clear, definitive statement by our legislature. Only by an unambiguous amendment to the Alcoholic Beverages Act can the parties before us, those similarly situated and the general public hope to have this issue finally decided.

Reversed.

MILLER, P. J., and BUCHANAN, C. J. (sitting by designation), concur.